## Leslie County et al. v. Pace.

(Decided Dec. 13, 1938.)

M. C. BEGLEY and WILL C. HOSKINS for appellants.

J. H. ASHER for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This appeal seeks our review and reversal of a judgment (entered upon the jury's verdict) of the Leslie circuit court, awarding the appellee, Manerva Pace, the sum of $1,000 as the value of a strip of her land alleged wrongfully taken by the appellant for highway purposes and for consequential damages to her adjacent property.

The factual situation out of which this suit arose is as follows:

In the year 1932, Manerva Pace was the owner of a certain hotel property abutting on the south side of Main St., running in an eastwardly and westwardly course, in Hyden, Ky.

The State Highway Commission in 1931 made a survey of a right-of-way required over and along this street for constructing highway No. 80 or more particularly the Hyden-Manchester link thereof.

The map made of this survey, locating the course, distance, and width, over the appellee's lot, of this right-of-way required for constructing this new highway, showed, according to its calls, that it took a strip of land from off and across the north end of plaintiff's lot, which extended southwardly from the center line of the right-of-way for a distance or width of 35 feet and across its frontage, east and west, 160 feet.

Deeds were prepared by the Highway Commission, among which was one calling for the conveyance to it of this particular strip of land called for by the survey, which was with the others sent by the commission to the Leslie county court, together with a blue print map of the survey, showing the owners of and the several parcels of land embraced in the right-of-way, which the court was asked to acquire by obtaining execution of the aforesaid deeds. Condemnation suits were filed accordingly.

Commissioners were appointed by the county judge to appraise the parcels of land to be taken, including that of plaintiff as described in the deed and called for by the survey.

Appraisement was made by the appointed commissioners of this strip of land at $500, which was awarded and paid to plaintiff therefor, upon her executing the aforesaid deed thereto on April 6, 1932.

It is contended by plaintiff and her witnesses that the commission's engineers, in making this 1931 survey of the right-of-way, therein located and described the several abutting properties called for by the boundary lines given of the proposed road and according to which stakes were placed along the center and outside lines thereof. She states that the deed sent to and executed by her was by her understood as intended to convey only

that strip of her land which was located by and came within the boundary lines indicated by these stakes.

It appears also that plaintiff is a widow, some sixty-five years of age, who can neither read nor write and that, when she was asked to convey this 35 by 160 foot strip of her land, as same was described in the deed, prepared according to the calls and description given and shown by the map of the survey, she asked the commissioners, because of being unable to read the calls of the deed, to point out to her the boundaries of the strip of land she was asked to convey by the deed and was told by the county officials then asking her execution of the deed that the strip of land she was conveying by the deed extended from the center line of the highway, as staked, to the outside south boundary, as same was also indicated by stakes, which she then saw standing and extending along the fence in front of her house; that she thereupon, intending to convey only the strip of her land extending to such stake-marked outside boundary line along her fence, executed the deed, believing she was conveying only such strip rather than that by the deed described as a strip of land "running thence (from John Asher's property line) in a westerly direction 221 feet in and through the property of the party of the first part and including all lands on the right side and within 35 feet of the center line of said survey," it being understood that "the said strip of land is not to be in excess of 35 feet in width," etc.

Also it is testified by plaintiff that a later or second survey was made, locating this right-of-way along her property, by which its outside boundary line, as first staked across her land, was changed and moved further south, taking a wider strip of it than had been previously conveyed or intended to be conveyed by her deed, so that the right-of-way not only came up to her hotel, but intersected and passed through the northwest corner of it, materially damaging it by cutting off some seven feet of it.

She states that this new highway was later constructed according to such changed course as was made by this alleged second survey in 1933 and that, by reason of the change made thereby, there was taken a strip across her lot 14 feet in width, which had not been conveyed the Highway Commission by her deed executed it in April, 1932; that this additional 14 feet taken laid

outside of and was not included within the boundaries of the 35-foot strip which she had by her deed conveyed it, and that she had never been paid any compensation whatever for this additional land so taken from her or the consequential damages to her adjacent property caused by its taking.

Her claim in this having been presented and refused, she filed this suit against appellants, alleging in substance the facts as set out and asking recovery of $1,500, as the value of this alleged extra 14-foot strip of land taken from her, and $1,000 consequential damages to her adjacent land and hotel building.

To plaintiff's petition, presenting such claims, the appellants filed answer denying its material allegations and by a separate paragraph affirmatively pleaded that the strip of plaintiff's land taken by the county, as part of the right-of-way required for construction of said highway, had been deeded to the Highway Commission by appellee on April 6, 1932.

By reply to the answer, plaintiff admitted the execution of the deed, but sought to avoid the pleaded effect of the deed, as a bar to her right to recover, by further alleging, as stated supra, that after the deed was executed by her in April, 1932, the appellants went outside the deeded boundary and took an extra 14-foot strip of land, for which no compensation had been paid her, and that she was entitled to recover the value of the strip wrongfully taken, together with the consequential damages caused her thereby, as sued for.

Defendant's demurrer to this pleading was overruled and its affirmative allegations by agreement were controverted of record.

A jury trial had upon these issues joined resulted in plaintiff's recovery of a verdict and judgment thereon for the sum of $1,000.

The evidence introduced by plaintiff to maintain the issues was to the effect, as above summarized, that in 1933, after she had executed in April, 1932, the deed conveying the 35-foot strip, south of and measured from the center line of the road, when she supposed she was conveying and had by her deed intended to convey only such a strip thereof as extended to the outside boundary line marked and designated by the stakes pointed out and driven there, and by the county officials then repre-

848

sented as being the outside boundary line of the land she was conveying, the center line of the right-of-way was changed; that by reason of the changing of the location of the center line of the road made by its 1931 survey, it was moved southward onto plaintiff's land a further distance of 14 feet, making it run not along with her fence, as it had by the first survey, but 14 feet beyond or south of it; that by this change a 14-foot strip of her land, outside the strip of land which had been conveyed by her to the Highway Commission, was thus wrongfully taken without compensation therefor.

In support of this contention, she introduced W. H. Mattingly, a surveyor, who also was serving as county judge at the time plaintiff's deed to the 35-foot strip in question was executed, who stated that he had made a survey of this highway as it now runs, immediately in front of and across the plaintiff's hotel lot; that in making his survey, locating its outside boundary line, he had begun "at a point out here on the street supposed to be in the middle of the street," which was indicated by "a little piece of tin with a nail through it into the surface of the street"; that he "went on with the same bearing and found another piece farther from that in the middle of the street," which indicated the center of the highway as it is now constructed; that by these marks he located the road's center stake with reference to plaintiff's property and that he then measured 35 feet towards her property; that the south outside boundary line of the strip conveyed, when thus measured, extended into the southwest corner of her hotel building about seven feet.

Further, the witness, upon being handed the blueprint showing the commission's 1931 survey made of the highway (in accordance with the calls of which the plaintiff's deed conveying the 35-foot strip had been made in April, 1932) and asked to take the deed and read it in connection with the location of the strip as shown on the map and to point out to the jury whether or not the calls of the deed ran in harmony with those shown by the map and blueprint, stated that the deed by its calls embraced the land and property called for by the 1931 survey, the outside lines of which were embraced in the way he had surveyed it, by going to the center of the road and running back 35 feet, from which point he found its south line runs into the southwest corner of the hotel.

Upon re-direct examination, he was asked: "If this center line was swung out 14 feet, what would it do or what effect would it have on the outside line?" He answered: "It would move it 14 feet from where it is now." He was then asked what effect would it have on the outside line, according to the deed 35 feet south of it, when he very properly answered it would extend it southwardly also a corresponding distance.

On the other hand, it is testified for the defendants, by the county judge and other of their officials who dealt with the plaintiff when her deed to the strip involved was obtained, that they told plaintiff they thought its outside boundary ran across her property, so as to cut into her hotel building, but that they did not think, though they could not promise, that she would ever be required to move the corner of her building, which, as shown by the map of the survey, was intersected by this outside boundary line of the highway. Also, one of the commissioners testified that upon his interview had with plaintiff when on the same mission, he had carried a blueprint or map of the road survey with him and had pointed out and showed her thereby to what extent the south outside line of the road crossed and intersected her property, before the plaintiff had executed the deed, but had also told her he did not think she would be required to move the intersected corner, but could not be sure, when plaintiff, about a week thereafter, executed the deed by which she conveyed to the Highway Commission a strip across the north end of her lot "to not exceed in width 35 feet."

It is true witnesses were introduced by plaintiff, who testified that a later survey was made in 1933 by the Highway Commission, by which the course and location of the south boundary line was changed as to several of the abutting properties lying above and to the east of plaintiff's property, and that by reason of such change so made they were called upon to move back some 14 feet certain improvements on their lots, so as to place them beyond the changed outside boundary line of the highway.

Plaintiff's witness, Asher, who is also the attorney here representing her, states that he had never made a deed to the Highway Commission conveying any part of his property previous to 1933, for the reason that it had not been invaded by the south boundary line called for under the commission's first or 1931 survey.

· Notwithstanding defendants' objection to this testimony was sustained, he and other owners of property located above that of plaintiff were permitted to testify as to the south boundary line of the highway having been changed by the 1933 survey, in that such testimony was ruled competent to show that such change of location in such outside boundary line made by the 1933 survey had effected a change of boundary line with respect to plaintiff's property, notwithstanding she had previously thereto, in 1932, executed a deed conveying to defendants only a strip of her land, as called for and described therein, according to the calls of the 1931 survey, which, it appears, yet harmonized and ran concurrently with the outside lines of the highway, as same was later constructed under the 1933 survey and according to which its outside boundary line was shown, even by the testimony of plaintiff's surveyor and witness, to still measure not more than 35 feet from the center line of the highway as finally constructed, including within its area the 14 foot strip claimed to lie beyond it.

In view of such being the issues here joined and the conflicting evidence of the parties introduced in support thereof, it is obvious that plaintiff's contention here made is, that although the 14-foot strip is now, by the changed center of the highway, made to appear to lie within the 35-foot strip deeded the Highway Commission in 1932, it was land lying outside of and not included in the 35 foot strip she had in 1932 conveyed the commission, as it was made only to appear by such artifice to come within it.

However, we, after a full and careful consideration of all the evidence given in support of such contention, are led to conclude that the plaintiff has failed to establish her claim of right to reformation of her deed, so as to show the exclusion of such 14-foot strip from the land conveyed by it, by such clear and convincing proof as is required for the reformation of it so as to make it conform with the real contract of sale and conveyance she contends she made with appellants. In fact, it appears by the testimony of her own surveyor and witness, Mattingly, as well as by the unanimous testimony of defendants' witnesses, that she, by her deed executed in April, 1932, conveyed the 35-foot strip of land in question to the Highway Commission according to the calls made by the map of the 1931 survey and that the outside line of the highway, as then surveyed, ran across plaintiff's

property just as it is by the plaintiff's witness, Mattingly, admitted that it now runs across it, according to his survey made and measured from the center line as located by him upon the highway as now constructed.

It would appear that the jury's verdict here returned—notwithstanding this failure of her evidence to show that the county has here taken an additional 14-foot strip off of the plaintiff's land, extending southward beyond the boundary line of the 35-foot strip she had conveyed in 1932 by the calls of her deed—was palpably and flagrantly against the evidence and, further, it is our opinion that the evidence clearly falls far short of being of such clear and convincing character as warranted the court's permitting the jury, under its instruction. in effect to reform the terms of her deed, even though at the time instructing the jury that the defendant county and Highway Commission had the right to take for state highway purposes that part of plaintiff's property which was included within 35 feet from the center line of the highway as it was established in April, 1932.

While we fully appreciate plaintiff's position in the premises and her claim that a 14-foot strip of her land lying outside the 35 foot strip she had conveyed to the Highway Commission has been taken by it, without compensation paid her either therefor or for the consequential damage to her adjoining property, resulting from such alleged wrongful taking, for which she is entitled to compensation. it must nevertheless, as a condition to recovery, be first reasonably shown that there has been such an uncompensated taking of her property or that the strip of land for which she was claiming compensation did not properly come within the boundary of land conveyed the Highway Commission in 1932.

Such being our view, we are constrained to hold that the judgment must be and it is reversed.